UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

WHITE BEHAVIORAL CONSULTANTS, P.C.,

                Debtor.

_____/

Case No. 25-47920-TJT
Chapter 11, Subchapter V
Hon. Thomas J. Tucker

### SMALL BUSINESS DEBTOR'S SUBCHAPTER V PLAN OF REORGANIZATION

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions appears at the end of this document.

**In addition to casting your vote to accept or reject the Plan, you may object to confirmation of the Plan. if you wish to object to confirmation of the Plan, you must do so by December 8, 2025.**

**Your ballot stating how you are voting on the Plan must be returned by December 8, 2025. The ballot must be mailed to the following address:**

> **Anthony J. Miller, Esq.**
> **Osipov Bigelman, P.C.**
> **20700 Civic Center Drive, Suite 420**
> **Southfield, MI 48076**

**A hearing on the confirmation of the Plan is scheduled for December 17, 2025 at 11:00 a.m., in person in Courtroom 1925 of the United States Bankruptcy Court, 211 W. Fort Street, Detroit, MI 48226.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

### ARTICLE 1
### HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

    **1.1**    **Nature of the Debtor's Business.**

Debtor is a Michigan professional corporation providing therapeutic, counseling, and mental health services to families, couples, and individuals of all ages, primarily in southeast Michigan. The Debtor operates out of 2 locations – in Dearborn and Ann Arbor, Michigan.

1

### 1.2 Filing of the Debtor's Chapter 11 Case.

Over the past several years, the Debtor suffered an unforeseen decline in revenues, particularly during the COVID-19 pandemic. To meet its obligations, the Debtor incurred loans from the US Small Business Association and "Merchant Cash Advance" lenders. At the same time, the Debtor took steps to reduce its overhead and costs, so as to maintain profitability. However, though the Debtor strove to meet its new obligations, it has been unable to do so, necessitating this Chapter 11, Subchapter V reorganization.

Debtor's liquidation value is minimal, compared to the value it can generate from ongoing operations and provision of services to its patients. Through this Plan, Debtor seeks to reorganize its obligations and continue to provide value to its employees, patients, and community.

### 1.3 Legal Structure and Ownership.

The Debtor is a Michigan professional corporation, formed in 2003. Dr. Michele T. White is the Debtor's sole owner.

### 1.4 Debtor's Assets.

Debtor's assets are detailed on the Schedules filed with the Court, and summarized on the Liquidation Analysis attached hereto as Exhibit A.

### 1.5 Summary of Debtor's Pre-Petition Liabilities.

Scheduled Secured Claims
- U.S. Small Business Administration (POC #4) – all asset lien - $572,836.72
- Kapitus Servicing, Inc. – all asset lien - $130,500.00
- Fundworks – all asset lien - $1,000.00

The total secured claims ($704,233.90) exceed the value of Debtor's assets ($152,957.48). Accordingly, pursuant to 11 U.S.C. § 506(a)(1), certain secured claims may be bifurcated into a secured and unsecured portion, as described more fully herein.

Priority Unsecured Claims
- Guideline 401(k) - $21,342.22

General Unsecured Claims*

| | | |
|---|---|---|
| American Express (POC #3) | $ | 12,096.46 |
| Awards Network | $ | 538.30 |
| Capital One Business Credit | $ | 5,499.82 |
| Empire Management (POC #1) | $ | 30,062.42 |
| HireRight | $ | 972.24 |
| Maner Costerisan (POC #2) | $ | 9,230.50 |
| Stericycle, Inc. | $ | 284.20 |
| Tebra Technologies, Inc. | $ | 3,800.00 |
| Xerox Business Solutions Midwest (Disputed) | $ | - |
| US Small Business Administration (unsecured portion) (POC #4) | $ | 419,879.24 |
| Kapitus (unsecured portion) | $ | 130,500.00 |
| Fundworks (unsecured portion) | $ | 1,000.00 |

*Unless otherwise indicated by Proof of Claim ("POC") designation, amounts of General Unsecured Claims refer to amounts originally scheduled by the Debtor.

The General Unsecured Claims of the U.S. Small Business Administration and Kapitus Servicing, Inc. represent the bifurcated, unsecured portion of such creditor's claims, pursuant to 11 U.S.C. § 506(a)(1).

Debtor scheduled the claim of Xerox Business Solutions Midwest as "disputed." Accordingly, this creditor will not be entitled to vote on the plan and will not receive any distributions under the plan, pursuant to Fed. R. Bankr. P. 3003(c)(2). In the event a disputed creditor files a timely, allowed claim, it will be entitled to vote on the plan and receive distributions (pro rata with other General Unsecured Creditors), subject to the Debtor's rights to object to such claim, described herein.

### 1.6  Significant Events During the Bankruptcy Case.

- Employment of Professionals:
    - Osipov Bigelman, P.C., as counsel for the Debtor (ECF No. 46)
- Appointment of Patient Care Ombudsman, Charles D. Bullock (ECF No. 40)
- Use of cash collateral approved (ECF Nos. 33)

### 1.7  Projected Recovery of Avoidable Transfers.

The Debtor has completed its investigation of prepetition transactions, with consideration given to the changes in the Bankruptcy Code adopted with the Small Business Reorganization Act of 2019 ("SBRA").

The SBRA amended 28 U.S.C. § 1409(b) to change the venue rules for actions to recover transfers from non-insider defendants in an amount less than $25,000.00. The amended § 1409(b) requires such actions be brought only in the district in which the defendant resides. This restriction significantly increases the cost of pursuing small claims. The SBRA also amended 11 U.S.C. § 547(b) to require "reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses" under § 547(c). Notably, as Debtor

3

25-47920-tjt    Doc 53    Filed 11/04/25    Entered 11/04/25 13:30:24    Page 3 of 17

was operating in the ordinary course until immediately before the Petition Date, creditors that received pre-petition payments have very strong "ordinary course" defenses under § 547(c)(2).

The Debtor did not identify any payments or transfers potentially falling within 11 U.S.C. §§ 544, 547, and/or 548.

## ARTICLE 2
## THE PLAN

The Debtor's Plan must describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired.  A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that cast votes, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that cast votes, vote in favor of the Plan.  A class that is not impaired is deemed to accept the Plan.

    **2.1.** **Unclassified Claims.**

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

    A.    Administrative Expenses

The Debtor must pay all allowed Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

    There are several types of Administrative Expenses, including the following:

1. If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2. If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3. Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

Administrative Expenses in this case include the following:

**Professional Fees**

- <u>Attorney fees for counsel for Debtor</u> – Debtor will pay attorney fees directly to its counsel, in cash, in full, on the later of 60 days following the Effective Date or entry of an order approving fees, or upon such later date as may be agreed upon by the Debtor and its counsel. Estimated Claim: $50,000.00, less $10,000.00 paid as a retainer.

- <u>Subchapter V Trustee Fees</u> – Debtor will pay Subchapter V Trustee fees directly to the Trustee, in cash, in full, on the later of 60 days following the Effective Date or entry of an order approving fees, or upon such later date as may be agreed upon by the Debtor and the Trustee. Estimated Claim: $5,000.00.

- <u>Patient Care Ombudsman's Fees</u> – Debtor will pay Patient Care Ombudsman fees directly to the Ombudsman, in cash, in full, on the later of 60 days following the Effective Date or entry of an order approving fees, or upon such later date as may be agreed upon by the Debtor and the Trustee. Estimated Claim: $5,000.00.

**2.2** **Classes of Claims and Equity Interests.**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

A. Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code. If the value

5

of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim.

Secured Claims in this case include the following:

- **Class 1 (Impaired) – Secured – U.S. Small Business Administration:**

    This class shall consist of the U.S. Small Business Administration ("SBA"). Huntington filed Proof of Claim No. 4, asserting a secured claim in the amount of $500,000.00.

    On or about September 2, 2021, the SBA filed a UCC-1 financing statement against all assets of the Debtor.

    Pursuant to 11 U.S.C. § 1123(b)(5), SBA shall have an Allowed Secured Claim ("SBA Secured Claim"), "crammed down" to the amount of $152,957.48 (representing the value of the Debtor's unencumbered assets subject to SBA's security interest as of the Petition Date), which shall accrue interest at the pre-petition contract rate of 3.75% until the pre-petition contract maturity date (August 18, 2051). The Debtor shall pay the SBA Secured Claim in equal monthly installments in the anticipated amount of $780.16, beginning 90 days following the Effective Date and continuing until the SBA Secured Claim is paid in full, with interest as described herein. Debtor shall make such payments directly to the SBA.

    SBA shall retain its UCC-1 lien on all assets of the Debtor (excluding Chapter 5 causes of action and Debtor's leasehold interests) to the extent of the SBA Secured Claim, until the SBA Secured Claim is paid in full, after which such UCC-1 lien shall be promptly released.

    The balance of SBA's claim (as filed at Proof of Claim No. 4) in the amount of $419,879.24 shall be treated as a Class 5 General Unsecured Claim.

- **Class 2 (Impaired) – Secured – Kapitus Servicing, Inc.:**

    This class shall consist of Kapitus Servicing, Inc. ("Kapitus"). Debtor's schedules described Kapitus holding a secured claim in the amount of $130,500.00.

    On or about June 3, 2022, CT Corporation System, upon information and belief, on behalf of Kapitus, filed a UCC-1 financing statement against certain assets of the Debtor.

    Pursuant to 11 U.S.C. § 1123(b)(5), Kapitus's secured claim shall be "crammed down" to $0.00, as no equity exists in the property subject to Kapitus's lien to secure Kapitus's Claim. Kapitus will not hold a security interest pursuant its security instrument(s) or UCC-1 filing.

    Kapitus shall have an Allowed Unsecured Claim in the amount of $130,500.00, which shall be treated as a Class 5 General Unsecured Claim.

- **Class 3 (Impaired) – Secured – Fundworks:**

    This class shall consist of Fundworks ("Fundworks"). Debtor's schedules described Fundworks holding a secured claim in the amount of $1,000.00.

    On or about November 23, 2022, Corporation Service Company, upon information and belief, on behalf of Fundworks filed a UCC-1 financing statement against certain assets of the Debtor.

    Pursuant to 11 U.S.C. § 1123(b)(5), Fundworks's secured claim shall be "crammed down" to $0.00, as no equity exists in the property subject to Fundworks's lien to secure Fundworks's Claim. Fundworks will not hold a security interest pursuant its security instrument(s) or UCC-1 filing.

    Fundworks shall have an Allowed Unsecured Claim in the amount of $1,000.00, which shall be treated as a Class 5 General Unsecured Claim.

    B. Classes of Priority Unsecured Claims.

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

- **Class 4 (Impaired) – Priority Unsecured – Guideline 401(k) Program:**

    This class shall consist of Guideline 401(k) ("Guideline").[1] As of the Petition Date, Debtor owed Guideline $21,342.22 on account of a 401(k) plan contribution arrearage. Guideline's claim holds priority pursuant to 11 U.S.C. § 507(a)(5).

    This claim is impaired. Debtor shall pay Guideline's claim in 15 equal monthly installments of $1,422.82, beginning 90 days following the Effective Date and continuing until Guideline's claim is paid in full. Debtor shall make payments directly to Guideline, to be allocated as directed by the Debtor.

    C. Class of General Unsecured Claims

- **Class 5 (Impaired) – General Unsecured Claims:**

The Claims of all Unsecured Creditors, including the unsecured portion of Secured Claims, as described in Section 2.2(A), are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

---

[1] Upon information and belief, Guideline has recently been acquired by Accrue 401k, Inc. ("Accrue"), who may act as Guideline's successor in interest. Debtor shall make payments under Class 4 to either Guideline or Accrue, as may be directed.

Class 12 General Unsecured Claims shall include the following:

| | | |
|---|---|---|
| American Express (POC #3) | $ | 12,096.46 |
| Awards Network | $ | 538.30 |
| Capital One Business Credit | $ | 5,499.82 |
| Empire Management (POC #1) | $ | 30,062.42 |
| HireRight | $ | 972.24 |
| Maner Costerisan (POC #2) | $ | 9,230.50 |
| Stericycle, Inc. | $ | 284.20 |
| Tebra Technologies, Inc. | $ | 3,800.00 |
| Xerox Business Solutions Midwest (Disputed) | $ | - |
| US Small Business Administration (unsecured portion) (POC #4) | $ | 419,879.24 |
| Kapitus (unsecured portion) | $ | 130,500.00 |
| Fundworks (unsecured portion) | $ | 1,000.00 |

Debtor shall commit its projected disposable income (as set forth in Section 3.2, *infra*) to be paid on a pro-rata basis to Class 5 General Unsecured Claim holders in 20 quarterly payments over 5 years, with the first such payment coming due 90 days following the Effective Date. Such payments will be made by the Debtor directly. Debtor anticipates a dividend to unsecured creditors of approximately 16.22%.

        D. **Class of Equity Interest Holders.**

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a professional corporation ("PC"), the Equity Interest holder is the owner.

Dr. Michele T. White is the sole Equity Interest holder of the Debtor, and her continued personal and professional services provided to the Debtor are essential to its successful operation, both during this case and following confirmation. Notwithstanding anything else in this Plan or 11 U.S.C. § 1141(d)(1)(B), Dr. White shall retain her Equity Interest in the reorganized Debtor in the same manner, nature, and extent as prior to the Petition Date.

    **2.3.** **Estimated Number and Amount of Claims Objections.**

The Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim, in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

    **2.4.** **Treatment of Executory Contracts and Unexpired Leases.**

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

The Debtor shall assume the following executory contracts and unexpired leases:

- Regus Management Group, LLC – lease of Dearborn, MI office space
- Regus Management Group, LLC – lease of Ann Arbor, MI office space

**2.5. Means for Implementation of the Plan.**

The Debtor has taken steps to address its financial difficulties. At the expiration of its previous commercial lease, the Debtor moved into a smaller, more economical, shared location. The Debtor reduced its workforce and labor costs, and removed unprofitable offerings from its services. Debtor will fund its payment obligations under this Plan from its business revenues.

On Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor. The Debtor expects to have sufficient cash on hand to make the payments required on the Effective Date and all other payments required under the terms of this Plan.

**2.6. Payments and Default Provisions.**

Except as otherwise provided herein, Debtor shall make all required payments under this Plan in 20 equal quarterly installments, to commence 90 days following the Effective Date. Debtor shall make such payments directly to Claimants.

If the Debtor defaults when the payment is due to any party entitled to payment under the Plan, such party shall file and serve written notice of such default to Debtor and Debtor's counsel of record by U.S. Mail. If any amount in default is not contested in writing or cured within thirty (30) days of receipt of the notice of default, such party, upon filing an Affidavit of Default attesting to failure to cure said default, shall be entitled to pursue any remedies available to it under the Bankruptcy Code. Notwithstanding any other provision in this Plan, the Bankruptcy Court shall retain jurisdiction to resolve any disputes concerning any defaults or alleged defaults under the Plan.

**2.7. Post-Confirmation Management.**

The post-confirmation management of the Debtor shall be as follows:

- Dr. Michele T. White – owner/operator

**2.8. Tax Consequences of the Plan.**

*Creditors and equity interest holders concerned with how the plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.*

Debtor is unaware of any potential tax consequences of the Plan on any particular Claimant or group of Claimants. All parties are encouraged to consult with their own tax professionals.

### 2.9. **Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan.**

Debtor has provided projected financial information. Those projections are listed in Exhibit B.

Debtor's projections are based upon certain assumptions, including:
- Inflation adjustments, estimated at 3% for 2027 and 2028, and 5% for 2029 and 2030;
- Rent increase at 5.25%/year (independent of inflation), with a 15% increase in year 3, when Debtor will need to renew its lease; and
- Debtor must undergo accreditation every three years. Anticipated accreditation expenses in year 1 ($8,000) and year 4 ($10,000).

## ARTICLE 3
## FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 3.1. **Ability to Initially Fund Plan.**

The Debtor believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date.

### 3.2. **Ability to Make Future Plan Payments and Operate Without Further Reorganization.**

The Debtor must commit all or such portion of the future earnings or other future income of the Debtor as is necessary for the execution of the Plan.

The Debtor has provided projected financial information. Those projections are listed in Exhibit B (referenced in Section 2.9, *supra*).

The Debtor's financial projections show that the Debtor anticipates a 5-year yield of $99,566.27, net of expenses and payments to secured and priority claims, as described herein (see Exhibit B).

This amount will be paid to general unsecured creditors, in quarterly installments on a pro-rata basis, anticipated as follows:[2]

| Creditor | Allowed Amount | Pro Rata % | Payment Per Quarter | | | | | Plan Total |
|---|---|---|---|---|---|---|---|---|
| | | | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | |
| American Express (POC #3) | $ 12,096.46 | 1.97% | $ 13.82 | $ 118.64 | $ 127.39 | $ 86.37 | $ 144.28 | $ 1,962.00 |
| Awards Network | $ 538.30 | 0.09% | $ 0.61 | $ 5.28 | $ 5.67 | $ 3.84 | $ 6.42 | $ 87.31 |
| Capital One Business Credit | $ 5,499.82 | 0.90% | $ 6.28 | $ 53.94 | $ 57.92 | $ 39.27 | $ 65.60 | $ 892.05 |
| Empire Management (POC #1) | $ 30,062.42 | 4.90% | $ 34.35 | $ 294.85 | $ 316.59 | $ 214.66 | $ 358.56 | $ 4,876.01 |
| HireRight | $ 972.24 | 0.16% | $ 1.11 | $ 9.54 | $ 10.24 | $ 6.94 | $ 11.60 | $ 157.69 |
| Maner Costerisan (POC #2) | $ 9,230.50 | 1.50% | $ 10.55 | $ 90.53 | $ 97.21 | $ 65.91 | $ 110.09 | $ 1,497.15 |
| Stericycle, Inc. | $ 284.20 | 0.05% | $ 0.32 | $ 2.79 | $ 2.99 | $ 2.03 | $ 3.39 | $ 46.10 |
| Tebra Technologies, Inc. | $ 3,800.00 | 0.62% | $ 4.34 | $ 37.27 | $ 40.02 | $ 27.13 | $ 45.32 | $ 616.35 |
| Xerox Business Solutions Midwest (Disputed) | $ - | 0.00% | $ - | $ - | $ - | $ - | $ - | $ - |
| US Small Business Administration (unsecured portion) (POC #4) | $ 419,879.24 | 68.40% | $ 479.70 | $ 4,118.09 | $ 4,421.83 | $ 2,998.13 | $ 5,007.95 | $ 68,102.81 |
| Kapitus (unsecured portion) | $ 130,500.00 | 21.26% | $ 149.09 | $ 1,279.92 | $ 1,374.32 | $ 931.83 | $ 1,556.49 | $ 21,166.60 |
| Fundworks (unsecured portion) | $ 1,000.00 | 0.16% | $ 1.14 | $ 9.81 | $ 10.53 | $ 7.14 | $ 11.93 | $ 162.20 |
| **TOTAL** | **$ 613,863.18** | 100.00% | | | | | | $ 99,566.27 |

The final Plan payment is expected to be paid on or about January 2031.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

# ARTICLE 4
# LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as Exhibit A.

Debtor estimates that $0.00 would be available to General Unsecured Creditors in a Chapter 7 liquidation.

# ARTICLE 5
# DISCHARGE

   **5.1.**   **Discharge.**

**If the Plan is confirmed under § 1191(a),** on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code;

or

---

[2] Projected allocations are estimates, based upon the filed and Allowed Claims as of the date of this Plan. Such allocations are subject to change, without notice, in the event additional Claims are thereafter filed, or in the event the amount of any Allowed Claim is adjusted upwards or downwards.

**If the Plan is confirmed under § 1191(b),** as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in section 523(a) of this title.

# ARTICLE 6
# GENERAL PROVISIONS.

### 6.1. Title to Assets.

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

### 6.2. Binding Effect.

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

### 6.3. Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4. Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under 11 U.S.C. § 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

### 6.5. **Captions.**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6. **Modification of Plan.**

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including re-voting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### 6.7. **Final Decree.**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## ARTICLE 7
## DEFINITIONS

**7.1.** The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

**7.2.** **Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**7.3. Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against the Debtor's estate under Chapter 123, Title 28, United States Code.

**7.4. Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**7.5. Allowed Claim**: Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) such claim is listed on Debtor's Schedules, and not listed as contingent, unliquidated, or disputed; (b) such claim is acknowledged by the Debtor in this Plan; (c) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (d) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**7.6. Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor shall be entitled on the Confirmation Date.

**7.5. Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.

**7.6. Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor shall be entitled on the Confirmation Date.

**7.7. Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**7.8. Bankruptcy Court**: The United States Bankruptcy Court for the Eastern District of Michigan.

**7.9. Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

**7.10. Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**7.11. Case**: This case, bearing Case Number 25-47920-tjt, under chapter 11 of the Bankruptcy Code, in which White Behavioral Consultants, PC is the Debtor.

**7.12. Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**7.13. Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**7.14. Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**7.15. Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**7.16. Confirmation Hearing**: The hearing to be held on April 10, 2024 to consider confirmation of the Plan.

**7.17. Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**7.18. Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**7.19. Debtor** or **Debtor-in-Possession**: Whit Behavioral Consultants, P.C., the debtor-in-possession in this Chapter 11 Case.

**7.20. Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**7.21. Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**7.22. Effective Date**: 30 days after entry of the order confirming the plan unless the plan or confirmation order provides otherwise.

**7.23. Equity Interest**: An ownership interest in the Debtor.

**7.24. Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**7.25. Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**7.26. Petition Date**: August 6, 2025.

**7.27. Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**7.28. Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**7.29. Proof of Claim/POC**: a Proof of Claim filed in this Bankruptcy Case pursuant to Federal Rule of Bankruptcy Procedure 3001.

**7.30. Reorganized Debtor**: The Debtor after the Effective Date.

**7.31. Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**7.32. Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

**7.33. Trustee**: Kimberly Clayson, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**7.34. Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Dated: November 4, 2025                /s/Michele T. White
                                       Dr. Michele T. White, on behalf of
                                       White Behavioral Consultants, PC,
                                       Debtor

16

25-47920-tjt    Doc 53    Filed 11/04/25    Entered 11/04/25 13:30:24    Page 16 of 17

Respectfully Submitted,

**OSIPOV BIGELMAN P.C.**

/s/ Anthony J. Miller
Anthony J. Miller (P71505)
Attorneys for White Behavioral Consultants, PC
20700 Civic Center Drive, Suite 420
Southfield, MI 48076
(248) 663-1804 Office / (248) 663-1801 Fax
am@osbig.com